# UNITED STATE DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff,

v.                                    CASE NO. 8:05-CV-1076-T-24MSS

HKW TRADING, LLC, HOWARD
WAXENBERG TRADING, L.L.C., and
DOWNING & ASSOCIATES TECHNICAL
ANALYSIS, n/k/a THE ESTATE OF
HOWARD WAXENBERG,

     Defendants,

HKW TRADING FUND I LLC and THE
ESTATE OF HOWARD WAXENBERG,

     Relief Defendants.

_____/

## ORDER REAPPOINTING RECEIVER

     **WHEREAS,** Plaintiff Securities and Exchange Commission ("Commission") has

filed an emergency motion for the appointment of a Receiver over all of the assets held in

the name of Defendants Howard Waxenberg Trading, L.L.C. and HKW Trading, LLC and

Relief Defendant HKW Trading Fund I LLC (collectively "Corporate Defendants"), with full

and exclusive power, duty and authority to: administer and manage the business affairs,

funds, assets, choses in action and any other property of the Corporate Defendants; marshal

and safeguard all of the assets of the Corporate Defendants; and take whatever actions are

necessary for the protection of the investors;

**WHEREAS**, the Commission has made a sufficient and proper showing in support of the relief requested by evidence demonstrating a <u>prima facie</u> case of violations of the federal securities laws by the Defendants;

**WHEREAS**, the Commission has submitted the credentials of Burton W. Wiand to be appointed as Receiver of all of the assets, properties, books and records, and other items of the Corporate Defendants, including any properties, assets and other items held in their names or the names of the Corporate Defendants' principal, and the Commission has advised the Court that Burton W. Wiand is prepared to assume this responsibility if so ordered by the Court;

**WHEREAS**, upon sufficient and proper showing by the Receiver and, for the protection of the investors and the Receivership Estate, the Court expanded the Receivership to include the Estate of Howard Waxenberg and Downing & Associates Technical Analysis;

**WHEREAS**, Burton W. Wiand was appointed the Receiver for Howard Waxenberg Trading, L.L.C., HKW Trading LLC, HKW Trading Fund I LLC, Downing & Associates Technical Analysis and the Estate of Howard Waxenberg, their subsidiaries, successors and assigns (collectively, the "Receivership Entities"); and

**WHEREAS**, the Receiver moves for reappointment.

**NOW, THEREFORE, it is ORDERED, ADJUDGED AND DECREED** that Burton W. Wiand is hereby reappointed the Receiver for the Receivership Entities, their subsidiaries, successors and assigns, and is hereby authorized, empowered and directed to:

1.    Take immediate possession of all property, assets and estates of every kind of the Receivership Entities, whatsoever and wheresoever located belonging to or in the possession of the Receivership Entities, including but not limited to all offices maintained by the Receivership Entities (including all buildings, structures and other property), rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of the Receivership Entities wherever situated, and to administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court;

2.    Investigate the manner in which the affairs of the Receivership Entities were conducted and institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Entities and their investors and other creditors, as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or unincorporated organizations, which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred monies or other proceeds directly or indirectly traceable from investors in the Receivership Entities, including against the Receivership Entities, their officers, directors, employees, affiliates, subsidiaries or any persons acting in concert or participation with them, or against any transfers of monies or other proceeds directly or indirectly traceable from investors in the Receivership Entities; provided such actions may include, but not be limited to, seeking imposition of constructive

trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under

Florida Statute § 726.101, et seq., or otherwise, rescission and restitution, the collection of

debts, and such orders from this Court as may be necessary to enforce this Order;

3.    Present to this Court a report reflecting the existence and value of the assets

of the Receivership Entities and of the extent of liabilities, both those claimed to exist by

others and those the Receiver believes to be legal obligations of the Receivership Entities;

4.    Appoint one or more special agents, employ legal counsel, actuaries,

accountants, clerks, consultants and assistants as the Receiver deems necessary and to fix

and pay their reasonable compensation and reasonable expenses, as well as all reasonable

expenses of taking possession of the assets and business of the Receivership Entities, and

exercising the power granted by this Order, subject to approval by this Court at the time the

Receiver accounts to the Court for such expenditures and compensation;

5.    Engage persons in the Receiver's discretion to assist the Receiver in carrying

out the Receiver's duties and responsibilities, including, but not limited to, the United States

Marshals Service or a private security firm;

6.    Defend, compromise or settle legal actions, including the instant proceeding,

in which the Receivership Entities, or the Receiver is a party, commenced either prior to or

subsequent to this Order, with authorization of this Court; except, however, in actions where

the Receivership Entities are a nominal party, as in certain foreclosure actions where the

action does not effect a claim against or adversely affect the assets of the Receivership

Entities, the Receiver may file appropriate pleadings in the Receiver's discretion. The Receiver may waive any attorney-client or other privilege held by the Receivership Entities;

7.     Assume control of, and be named as authorized signatory for, all accounts at any bank, brokerage firm or financial institution which has possession, custody or control of any assets or funds, wherever situated, of the Receivership Entities and, upon order of this Court, of any of their subsidiaries or affiliates, provided that the Receiver deems it necessary;

8.     Make or authorize such payments and disbursements from the Receivership Entities and assets taken into control, or thereafter received by the Receiver, and incur, or authorize the incurrence of, such expenses and make, or authorize the making of, such agreements as may be reasonable, necessary and advisable in discharging the Receiver's duties;

9.     Have access to and review all mail of the Receivership Entities and the mail of Howard K. Waxenberg (except for mail that appears on its face to be purely personal or attorney-client privileged) received at any office or address. All mail addressed to Howard K. Waxenberg that is opened by the Receiver and, upon inspection, is determined by the Receiver to be personal or attorney-client privileged, shall be promptly delivered to the addressee and the Receiver shall not retain any copy.

**IT IS FURTHER ORDERED** that, in connection with the reappointment of the Receiver provided for above:

5

10.    The Receivership Entities, and all of their directors, officers, agents, employees, attorneys, attorneys-in-fact, shareholders, and other persons who are in custody, possession, or control of any assets, books, records, or other property of the Receivership Entities shall deliver forthwith upon demand such property, monies, books and records to the Receiver, and shall forthwith grant to the Receiver authorization to be a signatory as to all accounts at banks, brokerage firms or financial institutions which have possession, custody or control of any assets or funds in the name of or for the benefit of the Receivership Entities;

11.    All banks, brokerage firms, financial institutions, and other business entities which have possession, custody or control of any assets, funds or accounts in the name of, or for the benefit of, the Receivership Entities shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Receiver;

12.    Unless authorized by the Receiver, the Receivership Entities and their principals shall take no action, nor purport to take any action, in the name of or on behalf of the Receivership Entities;

13.    The Receivership Entities, and their principals, and their respective officers, agents, employees, attorneys, and attorneys-in-fact, shall cooperate with and assist the Receiver, including, if deemed necessary by the Receiver, appear for deposition testimony and produce documents upon five (5) business days' notice (by facsimile). The Receivership Entities and their principals, and respective officers, agents, employees, attorneys, and

attorneys-in-fact shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver in the conduct of the Receiver's duties or to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the Receiver of the funds, assets, premises, and choses in action described above;

14.    The Receiver, and any counsel whom the Receiver may select, are entitled to reasonable compensation from the assets now held by or in the possession or control of or which may be received by the Receivership Entities; said amount or amounts of compensation shall be commensurate with their duties and obligations under the circumstances, subject to approval of the Court;

15.    During the period of this receivership, all persons, including creditors, banks, investors, or others, with actual notice of ths Order, are enjoined from filing a petition for relief under the United States Bankruptcy Code without prior permission from this Court, or from in any way disturbing the assets or proceeds of the receivership or from prosecuting any actions or proceedings which involve the Receiver or which affect the property of the Receivership Entities;

16.    The Receiver is fully authorized to proceed with any filing the Receiver may deem appropriate under the Bankruptcy Code as to the Receivership Entities;

17.    Title to all property, real or personal, all contracts, rights of action and all books and records of the Receivership Entities and their principals, wherever located within or without this state, is vested by operation of law in the Receiver;

7

18.     Upon request by the Receiver, any company providing telephone services to the Receivership Entities shall provide a reference of calls from the number presently assigned to the Receivership Entities to any such number designated by the Receiver or perform any other changes necessary to the conduct of the receivership;

19.     Any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Receivership Entities shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver;

20.     The United States Postal Service is directed to provide any information requested by the Receiver regarding the Receivership Entities, and to handle future deliveries of the mail of the Receivership Entities as directed by the Receiver;

21.     No bank, savings and loan association, other financial institution, or any other person or entity shall exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

22.     No bond shall be required in connection with the appointment of the Receiver. Except for an act of gross negligence, the Receiver shall not be liable for any loss or damage incurred by the Receivership Entities or by the Receiver's officers, agents or employees, or any other person, by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of the Receiver's duties and responsibilities;

23.    Service of this Order shall be sufficient if made upon the Receivership Entities and their principals by facsimile or overnight courier;

24.    In the event that the Receiver discovers that funds of persons who have invested in the Receivership Entities have been transferred to other persons or entities, the Receiver shall apply to this Court for an Order giving the Receiver possession of such funds and, if the Receiver deems it advisable, extending this receivership over any person or entity holding such investor funds;

25.    Immediately upon entry of this Order, the Receiver may take depositions upon oral examination of parties and non-parties subject to ten (10) business days' notice. In addition, immediately upon entry of this Order, the Receiver shall be entitled to serve interrogatories and requests for admissions. The parties shall respond to such discovery requests within ten (10) business days of service. Service of discovery requests shall be sufficient if made upon the parties by facsimile or overnight courier. Depositions may be taken by telephone or other remote electronic means.

26.    This Court shall retain jurisdiction of this matter for all purposes.

**DONE AND ORDERED** this 22nd day of February, 2006, at Tampa, Florida.


*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

I certify the foregoing to be a true
and correct copy of the original.
SHERYL L. LOESCH, Clerk
United States District Court
Middle District of Florida
By _____
              Deputy Clerk

Copies to:

Christopher E. Martin, Esq.
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
**Counsel for Securities and Exchange Commission**
Phone: (305) 982-6386
Fax:    (305) 536-4154

Maya M. Lockwood, Esq.
Fowler White Boggs Banker P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, Florida 33602
**Counsel for Burton W. Wiand, Receiver**
Phone: (813) 228-7411
Fax:    (813) 229-8313

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA


SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

v.                                        CASE NO.

HKW TRADING, LLC, HOWARD
WAXENBERG TRADING, L.L.C., and
DOWNING & ASSOCIATES TECHNICAL
ANALYSIS, n/k/a THE ESTATE OF
HOWARD WAXENBERG,

        Defendants,

HKW TRADING FUND I LLC and THE
ESTATE OF HOWARD WAXENBERG,

        Relief Defendants.

_____/

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges and states as follows:

1.    This Complaint arises out of a Ponzi scheme orchestrated by Howard Waxenberg, who committed suicide on May 15, 2005. Waxenberg carried out this scheme through his control of Downing & Associates Technical Analysis ("Downing"), an unincorporated entity, Howard Waxenberg Trading, L.L.C. ("Waxenberg Trading"), and HKW Trading LLC ("HKW Trading") (collectively "Defendants").

2.    Beginning no later than 1990 through May 2005, Defendants raised more than $70 million by offering and selling securities to approximately 200 investors. Defendants

diverted or misappropriated investors' funds to Relief Defendants HKW Trading Fund I LLC ("HKW Fund") and the Estate of Howard Waxenberg ("Estate of Waxenberg") (collectively "Relief Defendants").

3.     Defendants represented to investors that they were running a successful day-trading operation generating 20% annualized returns.  However, the truth was vastly different than the rosy picture Defendants painted.  In reality, investors' returns were not 20% per year, because, among other reasons, their funds were being invested in low-yield money-market funds, which were not generating 20% annualized returns.  Defendants also sent fictitious account statements to investors that materially overstated the value of individual investors' accounts.  In addition, due to this fraudulent scheme, Waxenberg took more than $1.6 million of investors' monies for his personal use.

4.     After Waxenberg's suicide, it is unclear who, if anyone, is in control of Downing, HKW Trading, HKW Fund and Waxenberg Trading.  HKW Fund and Waxenberg Trading still hold millions of investors' monies.  The SEC files this emergency action, among other reasons, to protect the investors' assets, and to ensure an orderly and equitable distribution of the remaining assets.

## DEFENDANTS

5.     HKW Trading is a Delaware LLC, incorporated in May 2003, with its principal place of business at 3639 Cortez Road in Bradenton, Florida.  Waxenberg owned, controlled and was the sole manager of HKW Trading.  Waxenberg used HKW Trading as an unregistered investment adviser to manage HKW Fund.

6.     The Commission brings this case against Downing n/k/a the Estate of Howard Waxenberg, any successor-in-interest, any personal representative or executor of Downing, or

any other representative or successor. Downing, conducted business under a fictitious business name registered with the State of California in 1990. Downing was an unregistered investment adviser, which transacted business in California and Florida. Until at least January 2003, Waxenberg used Downing as a vehicle through which he deposited investors' funds.

7.     Waxenberg Trading is a California LLC, incorporated in January 2000. Waxenberg Trading is an unregistered investment adviser, which transacted business in California and Florida. Investors' funds were managed and invested by Waxenberg Trading.

**RELIEF DEFENDANTS**

8.     HKW Fund is a Delaware LLC, incorporated during May 2003, with its principal place of business at 3639 Cortez Road in Bradenton, Florida. HKW Fund is a hedge fund structured to engage in securities and commodities investment transactions. HKW Trading managed and controlled HKW Fund.

9.     The Commission brings this case against the Estate of Waxenberg, any successor-in-interest, any personal representative or executor of the Estate of Waxenberg, or any other representative or successor. The Estate of Waxenberg came into existence as a result of Waxenberg's death on May 15, 2005. Waxenberg conducted business under the name of Downing and was the sole owner, manager and control person of Waxenberg Trading and HKW Trading. On April 3, 1987, Waxenberg received a censure, a $15,000 fine and a bar from association with any member of the National Association of Securities Dealers for defrauding his employer to avoid margin requirements by falsifying order tickets in options trading for his own account.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d) and 77v(a); Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e) and 78aa; and Section 214 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. § 80b-14.

11.     This Court has personal jurisdiction over Defendants and Relief Defendants and venue is proper in the Middle District of Florida, because their principal place of business is located in the Middle District of Florida.  In addition, the acts and transactions constituting violations of the Securities Act, Exchange Act and Advisers Act by the Defendants occurred in the Middle District of Florida.

12.     Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

## FACTUAL BACKGROUND

13.     From at least 1990 through May 2005, Defendants raised more than $70 million from nearly 200 investors.  Defendants pooled investors' funds into common accounts held in the name of Defendants Downing and Waxenberg Trading and Relief Defendant HKW Fund. Defendants charged a management fee based on the amount of assets under management and a percentage of the profits generated.

14.     Defendants orally and in writing represented to investors that they were day-trading their investments in options and futures indexes.  HKW Trading caused Relief Defendant

HKW Fund to issue a private placement memorandum ("PPM"), in which it was represented that the fund would obtain capital appreciation by following a technical trading strategy and effecting intra-day trades in securities and futures contracts.

15.    Defendants regularly communicated with investors about the status of their accounts through quarterly account statements.

## THE FRAUDULENT SCHEME

### A.    Material Misrepresentations Regarding the Rate of Investors' Returns

16.    Beginning no later than 2002 through at least January 2005, Defendants materially overstated investors' actual rate of return.  Defendants falsely claimed to investors they were earning a quarterly net investment return of approximately 5% or approximately 20% annually.  Investors received quarterly account statements that consistently had positive performance returns and no losses.  The quarterly net increase in the value of each investor's account was classified as "net earnings" and Defendants paid "interest" to investors that purportedly represented the investment returns generated.

17.    The fraudulently overstated returns duped investors into purchasing more securities from Defendants.  In addition, HKW Trading allowed some investors to purchase more securities by reinvesting their "net earnings" or quarterly "interest" payment into HKW Fund.  These overstated rates of return allowed Defendants to raise tens of millions of dollars.

18.    Contrary to their claims, Defendants did not generate 20% annual returns, or 5% quarterly returns.  At best, the bank and brokerage account records of Downing and Waxenberg Trading and Relief Defendant HKW Fund show that the investments made by them generated little returns.  In addition, a copy found in Defendants' files of a certified independent auditor's report for HKW Fund for the period July 1, 2004 through December 31, 2004 ("Audited

Financial Statement"), highlights that HKW Fund's rate of return was negative 3.41% during this six-month period or a negative 6.7% annualized. Yet, Defendants reported to investors that their accounts always increased in value. Defendants also specifically represented to investors that during the same six-months their account values increased by approximately 10% or about 20% annualized. Accordingly, Defendants knew, or were extremely reckless in not knowing, that the rate of return they reported to investors was materially overstated.

19. Investors' assets were invested in securities that could not generate the 20% annual returns Defendants claimed. The vast majority of investors' assets were placed in low-yield money-market funds, which were not generating 20% annual returns. Therefore, Defendants knew, or were extremely reckless in not knowing, their claims of 20% annualized returns were false.

20. Defendants ran a Ponzi scheme, since they were paying investors with new investors' capital, not actual earnings.

21. Investors received false IRS Form 1099s that showed payments of interest or earnings. Accordingly, investors would have inadvertently paid excess taxes on what they believed to be interest or earnings, but in actuality were likely a return of principal.

**B.    Material Misrepresentations About the Value of Investors' Assets**

22. Defendants routinely sent investors account statements that grossly overstated the value of investors' assets. As discussed above, investors who received quarterly checks for the payment of earnings or interest were actually receiving a return of principal or invested capital. Defendants should have reduced the value of investors' assets by approximately 20% per year; instead, they falsely reported to investors that their account values were not diminishing.

6

23.    Defendants' misrepresentations are demonstrated by the huge differences between the Audited Financial Statement and the false quarterly account statements disseminated to investors.   The Audited Financial Statement for the period ending December 31, 2004, reports that HKW Fund had just $5.8 million in members' capital; however, the account statements sent to investors paint a materially different picture, since Defendants reported at least four times this amount to investors.   For example, by reviewing just seven of the quarterly account statements that investors in HKW Fund received for the period ending December 31, 2004, these seven investors' accounts were worth approximately $25.6 million, an overstatement of $19.8 million compared to the Audited Financial Statement.    Accordingly, Defendants knew, or were extremely reckless in not knowing, they were materially overstating the amount of assets they had under management.

### C.   Defendants and Relief Defendants Received Ill-Gotten Gains

24.    Defendants and Waxenberg charged management or performance fees based on the false account values.   Since the returns were fabricated, Defendants and Waxenberg received unlawful compensation in the form of management fees and performance fees.   In fact, Waxenberg paid himself more than $1.6 million in ill-gotten gains from investors' monies.   For example, on April 14, 2004 Waxenberg transferred $1 million of investors' funds held by Downing to a checking account held in his name.   In addition, Relief Defendants received ill-gotten gains from Defendants' fraudulent scheme by, among other things, receiving tens of millions of dollars of investors' funds.

### D.   Emergency Relief is Needed to Protect Investors from Further Losses

25.    After Waxenberg's suicide, it is unclear who, if anyone, is in control of Downing, HKW Trading, HKW Fund and Waxenberg Trading, which collectively still hold

more than $3.8 million of investors' monies. The SEC files this emergency action, among other reasons, to protect the investors' assets from further dissipation and looting, and to ensure an orderly and equitable distribution of the remaining assets.

## CLAIMS FOR RELIEF

## COUNT I

## FRAUD IN VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 THEREUNDER

26.     The Commission repeats and realleges Paragraphs 1 through 25 of this Complaint as if fully set forth herein.

27.     Since a date unknown but since at least 2002, Defendants Downing, Waxenberg Trading and HKW Trading, directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of securities, have been knowingly, willfully or recklessly: (a) employing devices, schemes or artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaging in acts, practices and courses of business which have operated, are now operating and will operate as a fraud upon the purchasers of such securities.

28.     By reason of the foregoing, Defendants Downing, Waxenberg Trading and HKW Trading have, directly or indirectly, violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

29.     Unless enjoined, Defendants Waxenberg Trading and HKW Trading will continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## COUNT II

## FRAUD IN VIOLATION OF SECTION 17(A)(1) OF THE SECURITIES ACT

30. The Commission repeats and realleges Paragraphs 1 through 25 of this Complaint as if fully set forth herein.

31. Since a date unknown but since at least 2002, Defendants Downing, Waxenberg Trading and HKW Trading, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, have been knowingly, willfully or recklessly employing devices, schemes or artifices to defraud.

32. By reason of the foregoing, Defendants Downing, Waxenberg Trading and HKW Trading, directly and indirectly, have violated Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

33. Unless enjoined, Defendants Waxenberg Trading and HKW Trading will continue to violate Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## COUNT III

## FRAUD IN VIOLATION OF SECTIONS 17(A)(2) and 17(A)(3) OF THE SECURITIES ACT

34. The Commission repeats and realleges Paragraphs 1 through 25 of its Complaint as if fully set forth herein.

35. Since a date unknown but since at least 2002, Defendants Downing, Waxenberg Trading and HKW Trading, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities, have been: (a) obtaining money or property by means of untrue statements

of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (b) engaging in transactions, practices and courses of business which are now operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

36.     By reason of the foregoing, Defendants Downing, Waxenberg Trading and HKW Trading, directly and indirectly, have violated Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3).

37.     Unless enjoined, Defendants Waxenberg Trading and HKW Trading will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3).

## COUNT IV

## FRAUD IN VIOLATION OF SECTIONS 206(1) and 206(2) OF THE ADVISERS ACT

38.     The Commission repeats and realleges Paragraphs 1 through 25 of this Complaint as if fully set forth herein.

39.     Since a date unknown but since at least 2002, Defendants Downing, Waxenberg Trading and HKW Trading, by use of the mails, and the means and instrumentality of interstate commerce, directly or indirectly, have knowingly, willfully or recklessly: (i) employed devices, schemes or artifices to defraud their clients or prospective clients; and (ii) engaged in transactions, practices and courses of business which have operated as a fraud or deceit upon their clients or prospective clients.

40.     By reason of the foregoing, Defendants Downing, Waxenberg Trading and HKW Trading, directly or indirectly, have violated Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2).

41.    Unless enjoined, Defendants Waxenberg Trading and HKW Trading will continue to violate Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2).

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine and find that Defendants Downing, Waxenberg Trading and HKW Trading committed the violations of the federal securities laws alleged in this Complaint.

### II.

### Permanent Injunctive Relief

Issue a Permanent Injunction, restraining and enjoining Defendants Waxenberg Trading and HKW Trading, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, thereunder; Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1); Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3); and Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2).

### III.

### Asset Freeze, Accounting and Prevention of Document Destruction

Issue an Order: (1) freezing the assets of Defendants Downing, Waxenberg Trading and HKW Trading and Relief Defendants HKW Fund and the Estate of Waxenberg, until further Order of the Court; (2) preventing Defendants Downing, Waxenberg Trading and HKW Trading and Relief Defendants HKW Fund and the Estate of Waxenberg from the destruction or

alteration of documents, and requiring Relief Defendant the Estate of Waxenberg to file with this Court, within twenty days, a sworn written accounting of all assets.

## IV.

### Appointment of Receiver and Expedited Discovery

Issue an Order appointing a Receiver over the assets of Defendants Waxenberg Trading and HKW Trading and Relief Defendant HKW Fund to marshal and safeguard all of said assets, to perform any other duties the Court deems appropriate, and to prepare a report to the Court and the Commission detailing the activities of these companies, and the whereabouts of investor funds, and allow the parties to begin discovery on an expedited basis.

## V.

### Disgorgement

Issue an Order requiring Defendants Downing, Waxenberg Trading and HKW Trading and Relief Defendants HKW Fund and the Estate of Waxenberg to disgorge all ill-gotten profits or proceeds that they have received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest as to Defendants Downing, Waxenberg Trading and HKW Trading and Relief Defendant the Estate of Waxenberg.

## VI.

### Penalties

Issue an Order directing Defendants Downing, Waxenberg Trading and HKW Trading to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d) of the Exchange Act, 15 U.S.C. § 78(d)(3) and pursuant to Section 209(e) of the Advisers Act, 15 U.S.C. §§ 80b-9.

## VII.

## **Further Relief**

Grant such other and further relief as may be necessary and appropriate.

## VIII.

## **Retention of Jurisdiction**

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

June 9, 2005

By: _Christopher E. Martin_
Christopher E. Martin
Senior Trial Counsel
Arizona Bar No. 018486
Direct Dial: (305) 982-6386

Terence M. Tennant
Senior Counsel
Florida Bar No. 0739881
Direct Dial: (305) 982-6346

Cecilia M. Danger
Senior Counsel
Florida Bar No. 0523720
Direct Dial: (305) 982-6304

Attorneys for Plaintiff
Securities and Exchange Commission
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154

I certify the foregoing to be a true and correct copy of the original.
SHERYL L. LOESCH, Clerk
United States District Court
Middle District of Florida
By: _____
Deputy Clerk



# FOWLER WHITE BOGGS BANKER

### ATTORNEYS AT LAW

ESTABLISHED 1943

Patrizia Salvaggio-Delgado
Direct Dial: 813-222-3339
psalvaggio@fowlerwhite.com

February 23, 2006

## **VIA FEDERAL EXPRESS**

Clerk of the United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street, 4ᵗʰ Floor, Room 4209
Willmington, DE 19801

0 6    3 6

Re:    Securities and Exchange Commission v. HKW Trading, LLC, Howard Waxenberg
       Trading, L.L.C., and Downing & Associates Technical Analysis, n/k/a The Estate of
       Howard Waxenberg and HKW Trading Fund I LLC and The Estate of Howard
       Waxenberg, pending in the U.S.D.C. for the Middle District of Florida as
       Case No. 8:05-CV-1076-T-24SCB-MSS

## **MISCELLANEOUS ACTION TO BE FILED**

Dear Clerk:

       We represent Burton W. Wiand, the court-appointed Receiver of the above Defendants. Enclosed
please find the following: diskette, certified copies of the Complaint and Order Reappointing Receiver,
conformed copies of same, and a check in the amount of $39.00. Please file stamp the conformed copies
and return them to our office in the addressed stamped envelope provided.

       The above-mentioned Complaint and Order are to be filed as a miscellaneous action pursuant to
28 U.S.C. § 754. Although we enclosed a check in the amount of $39.00, it is our understanding that
since the Securities and Exchange Commission is a federal government entity and secured the
appointment of the receiver, the filing fee may be waived. Accordingly, we ask that you waive the filing
fee and return the enclosed check with the conformed copies.

       If you have any questions, please do not hesitate to contact me. Thank you for your attention to
this.

                                        Very truly yours,

                                        Patrizia Salvaggio-Delgado

PS/dms
Enclosures

cc:    Burton W. Wiand, Esq.

#2421099v1 (105-2127)        **FOWLER WHITE BOGGS BANKER P.A.**
TAMPA • ST. PETERSBURG • FORT MYERS • TALLAHASSEE • ORLANDO • NAPLES • WEST PALM BEACH • BONITA SPRINGS • JACKSONVILLE

501 EAST KENNEDY BLVD., SUITE 1700 • TAMPA, FLORIDA 33602 • P.O. BOX 1438 • TAMPA, FL 33601
TELEPHONE (813) 228-7411 • FAX (813) 229-8313 • www.fowlerwhite.com